IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDDUARD PRINCE, | * |
| Plaintiff, | * |
| v. | * Civil Case No.: SAG-25-01226 |
| UNITED STATES GOVERNMENT, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Edduard Prince, who is self-represented and a serial litigant in this Court, filed this action against "the United States Government"; Brooke Lierman, the Comptroller of Maryland; and Governor Wes Moore. ECF 1. There are a number of motions currently pending. First, Plaintiff has filed a Motion for Clerk's Entry of Default, ECF 14, and Motion for Default Judgment, ECF 15, as to Governor Moore. To sue the Governor of Maryland in his or her official capacity, service of process must be effected on "(1) the resident agent designated by the [Governor], if any," or "(2) the Attorney General or an individual designated by the Attorney General in a writing filed with the Clerk of the Supreme Court." Maryland Rule 2-124(k). This Court is not aware that Governor Moore has designated a resident agent. If not, any complaint naming him as a defendant must be served on the Maryland Attorney General. The record reflects that Plaintiff directed the U.S. Marshal to mail the summons and complaint to Governor Moore at the State House in Annapolis. ECF 12 at 1. Thus, Governor Moore has not been properly served. Plaintiff's motions will be denied because default is unwarranted.

Second, the United States government filed a motion seeking a two-week extension of time to respond to Plaintiff's complaint. ECF 16. Plaintiff opposed the extension. ECF 17. This Court finds that the brief extension requested is routine and unobjectionable and will grant the motion.

Third, and most substantively, the United States government has filed a motion to dismiss for lack of jurisdiction, ECF 18. Plaintiff opposed the motion, ECF 20, and filed a supplemental opposition, ECF 21.[1] This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the United States's motion will be granted.

I. **Factual Background**[2]

Plaintiff's six-time great-grandmother, Modesty, was kidnapped from Ghana, Africa as a child and enslaved in Maryland. ECF 1 ¶ 8. Plaintiff is also a five-time great-nephew of Harriet Tubman. *Id.* ¶ 12. Modesty's descendants, in Plaintiff's family chain, worked all or part of their lives in slavery. *Id.* ¶¶ 29–35.

In 2022–2023, the Maryland legislature considered, but did not ultimately enact, HB594 (Harriet Tubman Community Investment Act), a bill providing for reparations to African-Americans. *Id.* ¶¶ 12–19.

---

[1] In his supplemental opposition, Plaintiff argues that an attached letter that he received from President Trump demonstrates that the President supports his position, and Plaintiff requests that this Court order counsel for the government to confirm that they have conferred with the President regarding the government's position. This Court perceives nothing in the attached letter suggesting that the President supports Plaintiff's position and will decline Plaintiff's request.

[2] The facts in this section are derived from Plaintiff's Complaint, ECF 1, and are taken as true for purposes of this motion.

The Maryland Correctional Enterprises (MCE) profits by selling products made by inmates, a majority of whom are African-American, while paying the inmates $2.88 per day. *Id.* ¶ 25.

Plaintiff alleges that he has suffered "not only as a descendant of enslaved ancestors but also as a direct victim of Maryland's modern-day slavery practices, particularly under Maryland Correctional Enterprises (MCE)." *Id.* ¶ 37. He alleges that "The failure of the United States Government and the Maryland General Assembly to address and end such exploitation represents a direct violation of Plaintiff's rights" under the constitution and federal statutes. *Id.* ¶ 38. Relevant to this motion, he contends, "The Federal government further exacerbates these disparities by providing funding to the state of Maryland to house incarcerated individuals, reinforcing a system that profits from the imprisonment of African Americans." *Id.* ¶ 49.

Plaintiff asserts claims for "kidnapping and forced servitude," violations of the Thirteenth and Fourteenth Amendments, violations of two civil rights statutes, 42 U.S.C. §§ 1981 and 1983, and "criminal deprivation of rights" pursuant to 18 U.S.C. § 242.

## II. Legal Standards

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–102 (1998). When a Rule 12(b)(1) motion contests the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction rests with the plaintiff. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*; *see also White*

3

*Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) ("When a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, [the court] 'may consider evidence outside the pleadings without converting the proceedings to one for summary judgment.'") (quoting *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768). A district court should grant a motion to dismiss for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Morgan Stanley v. Babu*, Case No.: GJH-19-489, 2020 WL 1331995, at *3 (D. Md. Mar. 23, 2020) (quoting *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018)).

### III.  Motion to Dismiss

This Court lacks subject-matter jurisdiction over Plaintiff's claims for several independent reasons, which are addressed below.

#### A. Political Question

While Plaintiff does not expressly couch his Complaint as seeking "reparations," part of the relief he requests sounds in reparations. He requests payment for the "wages never paid" to his forebears, for which he contends the harm "has continued across generations through the denial of restitution, erasure of identity, racialized legal systems, inherited trauma, and systemic exclusion from wealth and opportunity that resulted from Modesty's forced labor." ECF 1 ¶¶ 28, 55. He also reviews in great detail the history of the failed Maryland reparations legislation, *id.* ¶¶ 12–19, and alleges that because the bill failed to pass and reparations have not been made, he was forced to file this lawsuit. *Id.* ¶¶ 28, 40–41.

Under the political-question doctrine, this Court is prevented from deciding disputes that are committed "to another branch of government." *See Baker v. Carr*, 369 U.S. 186, 210–11

(1962). This Court agrees with the government, and with a multitude of other courts that have addressed the issue, that the question of whether reparations should be paid is a political question under the purview of the legislative branch of government. *See, e.g.*, *Hawk-Bey v. United States*, 477 F. App'x 864, 866 (3d Cir. 2012); *Hannon v. Holder*, Civ. No. 2:15-0718, 2015 WL 1396445, at *2 (S.D. Ohio Mar. 25, 2015); *Long v. United States*, Civ. No. 1:06CV–P176–M, 2007 WL 2725973, at *5 (W.D. Ky. Sept. 14, 2007). Plaintiff himself acknowledges that fact in his discussion of Maryland's efforts to pass reparations legislation and his connection of those efforts to his claims in this case. ECF 1 ¶ 28. Because Plaintiff's claims sounding in reparations present a non-justiciable political question, they must be dismissed.

### B.  Standing to Sue

As the Supreme Court has explained, the standing doctrine is "built on a single basic idea — the idea of separation of powers." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). To ensure that the federal courts do not encroach on the purview of the legislative or executive branches, Article III of the United States Constitution restricts the jurisdiction of the federal courts to actual "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2. In other words, Article III standing exists only where "questions [are] presented in an adversary context." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)) (internal quotation marks omitted). At this stage of his case, to establish standing, Plaintiff must plead facts to plausibly establish standing, because it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Overbey v. Mayor of Balt.*,

930 F.3d 215, 227 (4th Cir. 2019) (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Thus, Plaintiff's Complaint must include factual allegations to plausibly establish (1) that he "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that his injury is "fairly traceable to the challenged action of the defendant"; and (3) that his injury is capable of redress "by a favorable decision." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (quotations omitted). Those "separate criteria" each must be satisfied. *Griffin v. Dep't. of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019). The injury asserted must be more than a simple failure of government officials to comply with the law. *See Lujan*, 504 U.S. at 577 (noting that Congress cannot "convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts."); *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) ("[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.") (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)); *see also United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power.").

Plaintiff is unable to meet the three prongs of the standing analysis as to either his slavery-based claim or his claim relating to the Maryland correctional system. In both contexts, Plaintiff fails to allege a specific present harm that is concrete and particularized to him, rather than systemic race-based injustices that are too generalized to constitute "injury-in-fact." In both contexts, Plaintiff has failed to allege that his claimed harms are fairly traceable to actions by the United States government. He pleads no actual facts to establish that it was the United States

government who enslaved Modesty centuries ago. The Maryland correctional system is run by the state, not the federal government. And in both contexts, Plaintiff fails to show that his claimed harms would likely be redressed by a favorable judicial decision. Put simply, he has not alleged any facts tying his personal economic condition either to Modesty's forced labor or to the work (if any) he or anyone else performed in the Maryland correctional system. As to his claims premised on the work performed by his ancestors, other courts have widely found that plaintiffs making claims for the indirect residual effects of slavery lack standing to sue. *See, e.g.*, *Tatum ex rel. Blacks v. United States*, 630 F. App'x 638 (7th Cir. 2016) ("[A] plaintiff cannot pursue claims belonging to his ancestors whether or not the wrongs done to the ancestors have injured the plaintiff indirectly."); *In re Afr. Am. Slave Descendants Litig.*, 471 F.3d 754, 759 (7th Cir. 2006); *Cato v. United States*, 70 F.3d 1103, 1109–10 (9th Cir. 1995). Accordingly, Plaintiff also lacks standing to sue the federal government.

### C. Sovereign Immunity

Additionally, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976). Any waiver of sovereign immunity must be expressed unequivocally. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). "[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)). Plaintiff has not done so as to any of his claims.

Section 242 of Title 18 of the United States Code is a federal criminal statute, and Plaintiff has not shown that this statute gives rise to civil liability or authorizes a private right of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994); *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). *Capps v. Long*, No. 20-6789, 2021 WL 4843568, at *2 (4th Cir. Oct. 18, 2021). Similarly, 18 U.S.C. § 1201, which governs kidnapping, also has no private right of action, and there has been no waiver of sovereign immunity. *See Harnden v. Croswell-Lexington Cmty. Schs.*, No. 15-cv-12738, 2016 WL 2731188, at *2 (E.D. Mich. May 11, 2016) ("[T]here is no private right of action for purported violations of the Federal Kidnapping Act.") (collecting cases).

Turning to Plaintiff's claim for forced servitude, § 1595 of the Trafficking Victims Protection Act took effect on December 19, 2003, and numerous courts have found it lacks retroactive effect. *See, e.g.*, *Barjo v. Cherian*, 349 F. Supp. 3d 510, 515 (D. Md. 2018) ("[B]ecause Congress did not clearly provide for retroactive effect of the newly created private right, this Court finds that Section 1595 does not apply retroactively and Barjo may only seek relief for conduct after the statute's effective date."); *Ditullio v. Boehm*, 662 F.3d 1091, 1100 (9th Cir. 2011) ("[S]ection 1595 cannot apply retroactively to conduct that occurred before its effective date."); *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012) (concluding that § 1595 had no retroactive effect); *Mouloki v. Epee*, 262 F. Supp. 3d 684, 695 (N.D. Ill. 2017) (same); *Doe v. Siddig*, 810 F. Supp. 2d 127, 136 (D.D.C. 2011) ("[C]onclud[ing] that permitting private litigants to bring suit under Section 1595 for violations of Sections 1589 and 1590 based on conduct predating December 19, 2003 would have an impermissible retroactive effect, one that this Court declines to endorse absent an affirmative contrary expression of intent from Congress."), *vacated in part on other grounds*, Civ. No. 10-01256 (CKK), 2011 WL 13567857 (D.D.C. Sept. 27, 2011). This

Court finds those cases persuasive in light of the strong presumption against retroactivity. To allow a plaintiff to seek a remedy for a violation that took place centuries before TVPA's effective date would contravene the principle that a party must be on notice of the wrongfulness of the conduct in question. The TVPA therefore provides no viable cause of action for the conduct involving Modesty.

Plaintiff also alleges a number of constitutional claims against "the United States Government." A person whose constitutional rights have been violated by a state official may bring an action seeking monetary damages against the official under 42 U.S.C. § 1983. "But § 1983 does not provide a cause of action against *federal* officials, and there is no analogous statute imposing damages liability on federal officials." *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019). To the extent Plaintiff asserts a discrimination claim under 42 U.S.C. § 1981, it also provides no remedy against federal officials. *See, e.g.*, *Middlebrooks v. Leavitt*, 525 F.3d 341, 349 (4th Cir. 2008) (affirming dismissal of plaintiff's § 1981 discrimination claim against federal officials).

The only (very limited) path to assert constitutional claims against federal officials runs through *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In that case, the Supreme Court implied a cause of action under the Constitution of the United States against federal officials for violating federal constitutional rights. *Id.* at 397. But in the intervening years, the Supreme Court has significantly limited the types of causes of action that may be brought in that vein. *See Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017). In *Abbasi*, the Supreme Court clarified that "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). The *Abbasi* Court described the only three cases in which a *Bivens*

9

remedy has been found available: *Bivens*, 403 U.S. at 389–98 (concluding that a remedy was available for Fourth Amendment claim against federal agents after they handcuffed a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (recognizing a *Bivens* remedy in suit against a Congressman by former employee who claimed sex discrimination in violation of the due process clause of the Fifth Amendment); and *Carlson*, 446 U.S. at 23 (recognizing a damages remedy under *Bivens* for Eighth Amendment violation by federal jailers when they refused to treat a prisoner-plaintiff's asthma). 582 U.S. at 131. The *Abbasi* Court then formulated a two-step inquiry for determining if a *Bivens* remedy is available, requiring that courts first look to whether "the statutory or other legal mandate under which the officer[s] w[ere] operating" differs "in [any] meaningful way" from the three cases in which the Court has recognized a Bivens remedy. *Id.* at 139–40. If there is no meaningful contextual difference, then a *Bivens* remedy remains available. *Tun-Cos*, 922 F.3d at 522–23. If the context is new, however, this Court is required to consider whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Abassi*, 582 U.S. at 136. In other words, the inquiry is who should decide that a damages remedy should exist – the legislative branch or the judiciary. *Id.* Importantly, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001), finding that the creation of damages remedies should be left to Congress.

> In addressing the first part of the inquiry,
>
> [a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139–40. Here, both of Plaintiff's exploitation-based claims are entirely dissimilar from the three recognized *Bivens* causes of action.

Therefore, this Court proceeds to the second step and must determine whether "there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022). Here, there certainly is. As this Court noted above, Plaintiff's slavery claim sounds in reparations, an issue that state and federal legislatures have considered for years. And as to his claim relating to federal government funding of Maryland correctional institutions, issues relating to government funding and appropriations rest in the purview of Congress, not this Court. Creation of damages remedies against federal officials either for the harms occasioned by slavery or the funding of current conditions in Maryland prisons should be left to Congress. Plaintiff's constitutional claims against the United States must therefore be dismissed.

## IV. Conclusion

For the reasons set forth above, Plaintiff's default-related motions, ECF 14 and 15, will be DENIED and the United States's motion for extension of time, ECF 16, and motion to dismiss, ECF 18, will be GRANTED. All of Plaintiff's claims against the United States are dismissed without prejudice. A separate Order follows.

Dated: October 28, 2025                                        /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge