**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

EDDUARD PRINCE, *
*
Plaintiff, *
*
v. * Civil Case No.: SAG-25-01226
*
LIERMAN, *et al.*, *
*
Defendants. *
*

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Edduard Prince, who is self-represented, filed an amended complaint in this action against Governor Wes Moore, the Governor of Maryland, and Brooke Lierman, the Comptroller of Maryland, in their official capacities (collectively, "Defendants"). ECF 32. There are a number of motions currently pending. First, Plaintiff has filed a Motion for Clerk's Entry of Default, ECF 38, and a Motion for Default Judgment, ECF 39, as to both Defendants. Default is a disfavored disposition. The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) (noting that, even in cases where a default has already been entered, "[g]enerally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). Plaintiff's default-related motions will be denied, as the Defendants have now responded and have asserted a meritorious defense.

Second, Defendants have filed a motion to dismiss for lack of jurisdiction and failure to state a claim, ECF 41. Plaintiff opposed the motion, ECF 43, and Defendants filed a reply, ECF

44. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Defendants' motion will be granted.

## I. FACTUAL BACKGROUND[1]

Plaintiff's six-time great-grandmother, Modesty, was kidnapped from Ghana, Africa as a child and enslaved in Maryland. ECF 32 ¶ 9. Plaintiff has also identified other enslaved family members, including Harriet Tubman, his five-time great-aunt. *Id.* ¶¶ 14–19. He alleges ongoing economic harm because "[t]he labor of these individuals produced economic value while depriving Plaintiff's family of wages and generational wealth." *Id.* ¶¶ 21–22.

Plaintiff also alleges that, "Maryland maintains systems of compelled or effectively compelled labor under state authority."[2] *Id.* ¶ 23. He states that "African Americans are disproportionately impacted by these systems" and that he "has been subjected to or affected by these practices." *Id.* ¶¶ 25–26. He asserts that the present-day compelled labor system is a "continuation of labor extraction that began with Modesty's forced labor." *Id.* ¶ 27. He asserts constitutional claims and requests declaratory and injunctive relief along with compensatory and punitive damages. *Id.* at 6.

## II. ELEVENTH AMENDMENT IMMUNITY

The Defendants in this case are state officials. The Eleventh Amendment provides that a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *Pennhurst State Sch. & Hosp. v. Halderman*,

[1] The facts in this section are derived from Plaintiff's Amended Complaint, ECF 32, and are taken as true for purposes of this motion.

[2] In this iteration of his complaint, Plaintiff does not identify the "compelled labor" systems he contests. His original complaint discussed profits earned by Maryland Correctional Enterprises (MCE) from the sale of items made by inmates who receive low wages, but those allegations are absent from the Amended Complaint. ECF 1 ¶ 25.

465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.") (citation omitted). While the State of Maryland has waived its sovereign immunity for certain types of cases brought under the Maryland Tort Claims Act, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment and agreed to be sued for damages in federal court.

Because Defendants are state officials being sued in their official capacities for engaging in official duties, the State of Maryland is the real party in interest. *See Edelman v. Jordan*, 415 U.S. 651, 662–65 (1974) (finding the state to be the real party in interest when its officials are sued and damages would be payable from the state treasury); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (finding no difference between a suit against the state itself and suit against a state officer in his official capacity). Because this suit is, in essence, a suit against the State of Maryland, Plaintiff's damages claims are barred by the Eleventh Amendment and cannot proceed in federal court.

Plaintiff correctly contends that, under the *Ex Parte Young* exception, a plaintiff may state a valid claim for injunctive relief against state employees sued in their official capacities. To determine whether *Ex Parte Young* applies to federal claims, this Court must "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)). For the reasons described below, this Court need not reach the issue because, even if

the *Ex Parte Young* exception were to apply to Plaintiff's declaratory and injunctive claims, this Court otherwise lacks subject matter jurisdiction to adjudicate them.

## III. POLITICAL QUESTION

In its opinion dismissing the claims in Plaintiff's original complaint against the federal government, this Court noted that "part of the relief he requests sounds in reparations" because he sought monetary compensation for his ancestors' labor. ECF 22 at 4–5. That original complaint reviewed in great detail the history of the failed Maryland reparations legislation, ECF 1 ¶¶ 12–19, and alleged that because the bill failed to pass, he was forced to file this lawsuit. *Id.* ¶¶ 28, 41. This Court expressly found that the propriety of reparations is a political question and that this Court lacks subject matter jurisdiction to decide it. ECF 22 at 4–5.

In his Amended Complaint, Plaintiff requests the same relief but simply omits his discussion of the attempts at reparations legislation. *See* ECF 32. He still makes claims for monetary compensation for his ancestors' labor. *Id.* at 6. Eliminating the express discussion of the legislative efforts does not change the fact that reparations are a political question appropriately within the purview of legislative bodies. This Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims that he is owed compensation for his ancestors' work.

## IV. STANDING TO SUE

Moreover, Plaintiff has not established standing to sue in his Amended Complaint. As the Supreme Court has explained, the standing doctrine is "built on a single basic idea—the idea of separation of powers." *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). To ensure that the federal courts do not encroach on the purview of the legislative or executive branches, Article III of the United States Constitution restricts the jurisdiction of the federal courts to actual "Cases" and

"Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2. In other words, Article III standing exists only where "questions [are] presented in an adversary context." *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)) (internal quotation marks omitted). At this stage of his case, to establish standing, Plaintiff must plead facts to plausibly establish standing, because it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227 (4th Cir. 2019) (citations omitted).

Thus, Plaintiff's Complaint must include factual allegations to plausibly establish (1) that he "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that his injury is "fairly traceable to the challenged action of the defendant"; and (3) that his injury is capable of redress "by a favorable decision." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (internal quotation marks omitted). The injury asserted must be more than a simple failure of government officials to comply with the law. *See Lujan*, 504 U.S. at 577 (noting that Congress cannot "convert the undifferentiated public interest in executive officers' compliance with the law into an individual right vindicable in the courts.") (internal quotation marks omitted); *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) ("[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.") (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)); *see also United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power.").

Plaintiff is unable to meet the three prongs of the standing analysis as to either his slavery-based claim or alleged "continuing labor extraction" claim. In both contexts, Plaintiff fails to allege a specific present harm that is concrete and particularized to him, rather than systemic race-based injustices that are too generalized to constitute "injury in fact." Moreover, he has not alleged how his injury would be redressed by a favorable decision on his request for declaratory and injunctive relief.

As to his claims premised on the work performed by his ancestors, other courts have widely found that plaintiffs making claims for the indirect residual effects of slavery lack standing to sue. *See, e.g.*, *Tatum ex rel. Blacks v. United States*, 630 F. App'x 638 (7th Cir. 2016); *In re African-American Slave Descendants Litig.*, 471 F.3d 754, 758 (7th Cir. 2006); *Cato v. United States*, 70 F.3d 1103, 1109–10 (9th Cir. 1995). Plaintiff has not established any concrete or particularized harm he has experienced that would not also accrue to any person with ancestors who served as slaves.

With respect to his claims regarding present-day policies, his description of the alleged "systems of compelled or effectively compelled labor" are too vague to even provide notice of the nature of the claim. ECF 32 ¶ 23. His additional conclusory claim that he has been "subjected to or affected by these practices" is not sufficiently concrete and particularized to establish injury in fact. *Id.* ¶ 26. Moreover, Plaintiff has not demonstrated how declaratory and injunctive relief ending "systems of compelled or effectively compelled labor" would concretely benefit him, as opposed to just adjusting state policy in a way he deems preferable. *Id.* ¶ 23. "The injury in fact requirement protects the federal courts 'from becoming a vehicle for the vindication of the value interests of concerned bystanders'" and "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *Am. Fed'n of State,*

*Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 722 (D. Md. 2025), *vacated on other grounds*, 172 F.4th 361 (4th Cir. 2026) (quoting *Food & Drug Admin.*, 602 U.S. at 381–82 (2024)). Accordingly, Plaintiff has not met his burden to establish standing to bring the claims he asserts, even if his claims for declaratory and injunctive relief were deemed subject to the *Ex Parte Young* exception.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's default-related motions, ECF 38 and 39, will be DENIED and Defendants' motion to dismiss, ECF 41, will be GRANTED. Plaintiff's claims are dismissed without prejudice and this case will be closed. A separate Order follows.

Dated: September 2, 2026

/s/
Stephanie A. Gallagher
United States District Judge